IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELLEN J. O'PHELAN, | ) | Civ. No. 09-00236 SPK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERARD LEE LOY, BENTON BOLOS, | ) | |
| AND COUNTY OF HAWAII, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT, (2) GRANTING PLAINTIFF'S RULE 56(F) REQUEST, AND
(3) DENYING WITHOUT PREJUDICE COUNTY  DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

In this civil-rights suit, Plaintiff Ellen J. O'Phelan has moved for partial

summary judgment, seeking to establish as a proven fact that Defendant or

Defendants violated a constitutional right.  [Clerk's Docket Document No.

("Doc.") 58].  Defendants Benton Bolos and County of Hawaii (collectively

"County Defendants") have opposed the motion and filed a counter motion for

partial summary judgment, seeking dismissal of the federal claims under 42 U.S.C.

§ 1983.[1]  [Doc. 80].  In response to the counter motion, Plaintiff has filed a request for relief under Fed. R. Civ. P. 56(f), seeking additional time for discovery to respond fully to the County Defendants' counter motion. [Doc. 96].

Dan O'Phelan represents Plaintiff, and is appearing pro se on a related third-party complaint against him.  Gerard Lee Loy is appearing pro se, both as a Defendant and as a Cross-claimant/Third-party Plaintiff.  Defendant Benton Bolos and the County of Hawaii are represented by Deputies Corporation Counsel Brooks Bancroft and Michael Udovic.  The matters were submitted without an oral hearing under Local Rule 7.2(d).

For the reasons set forth, the Court (1) DENIES Plaintiff's Motion for Partial Summary Judgment, (2) GRANTS Plaintiff's Rule 56(f) request for additional time, and therefore (3) DENIES without prejudice the County Defendants' Counter Motion for Partial Summary Judgment.

---

[1] Defendant Gerard Lee Loy has filed what the court construes as a joinder of simple agreement under Local Rule 7.9.  *See* Declaration of Lee Loy of May 5, 2010 [Doc. 82-1], at 2 ¶ 3 ("I understand those Defendants County of Hawaii and [sic] are filing a cross motion for summary judgment in their favor and I join in that motion for summary judgment as being for them and myself.").  It is unclear whether Lee Loy intended a *substantive* joinder (as he has not properly filed a cross- or counter-motion for summary judgment on his own behalf).  If he was intending to file a counter motion seeking substantive relief such as summary judgment on any claim against *him* by Plaintiff, such a counter motion would be denied for the same reasons that Plaintiff's motion for partial summary judgment is denied (there are genuine issues of material fact in dispute).

I.

In a previous order of January 27, 2010, the Court denied in part and granted in part a motion to dismiss by Defendant Lee Loy.  The Court ruled that Plaintiff's First Amended Complaint ("FAC") stated a federal claim against Lee Loy under 42 U.S.C. § 1983 for violation of a protected constitutional right.  *See, e.g.*, *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (reiterating that a section 1983 claim requires two essential elements: (1) action under color of state law, and (2) deprivation of a protected federal right).  The Court concluded that the FAC alleged "joint action" between Lee Loy (a private, non-governmental employee) and Defendant Bolos (an employee of the County of Hawaii) so that Lee Loy could have been acting "under color of law" for purposes of Section 1983.  *See Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) ("[a] private individual may be liable under § 1983 if [he] conspired or entered joint action with a state actor.").  The Court also concluded that the FAC alleged a deprivation of a protected right of privacy in confidential medical records.  *See, e.g.*, *United States v. Comp. Drug Testing, Inc.*, 513 F.3d 1085, 1137(9th Cir. 2008) (reiterating that individuals have a constitutionally-protected right in the privacy of personal medical information and records).

Although the prior order did not address whether a federal claim was stated

as against the *County* Defendants (Bolos, in his individual and official capacities, and the County of Hawaii), the ruling that there is such a right for purposes of Section 1983 also applies to claims against the County Defendants.  The FAC stated a plausible claim as against the County Defendants.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (requiring pleading of enough factual detail to make a claim "plausible").[2]

The present motions move past the pleading stage and now turn primarily on whether or not there is *evidence* of such a civil-rights violation by Defendants.  The Court here focuses on whether, or to what extent, there is evidence or possible evidence (1) that Defendant Lee Loy had improper access to Plaintiff's confidential medical records; (2) that Defendant Bolos may have provided such records to Defendant Lee Loy through an improper agreement or otherwise; and (3) if Bolos might have provided or allowed Lee Loy improper access, whether such a release would have been the result of a "custom or policy" of Defendant County of Hawaii (*e.g.*, inadequate training or supervision).

_____

[2] The parties have not raised, and the Court has not addressed, Plaintiff's pendent state-law claims for conspiracy, trespass to chattels, invasion of privacy, and negligent and intentional infliction of emotional distress.  The Court also has not addressed Defendant Lee Loy's counter-claim against Ellen O'Phelan and third-party claim against Dan O'Phelan (who is representing Ellen O'Phelan, and is also representing himself pro se), both of which sound in defamation. [Defendant Lee Loy's Answer, Counterclaim and Third Party Complaint of Feb. 9, 2010 (Doc. 42), at 16].  The Court will address Plaintiff's Motion to Dismiss [Doc. 62] in a separate order.

Here, Defendant Lee Loy and Plaintiff also provide evidence or argue regarding collateral factual assertions (such as details as to whether Plaintiff was or was not assaulted in May of 2008 and various statements she may or may not have made about that incident).  Ultimately, such factual issues largely have no bearing towards the issues in *this* case, which depends on whether there was a violation of privacy in Plaintiff's medical records and whether Defendants were responsible for such a violation.

## II.

The present dispute about potential disclosure of medical records arises out of an underlying collateral matter, and the parties are familiar with the large factual record in that regard.  Here, the Court sets forth particular allegations of the FAC, or relevant evidence in the current summary judgment record, only as necessary to explain its rulings.  Other details about the underlying dispute are beyond the scope of these motions.[3]

The Court construes disputes of material fact in favor of the non-moving party in accordance with well-accepted summary judgment principles.  *See, e.g.*, *Tennison v. City and County of S.F.*, 570 F.3d 1078, 1087 (9th Cir. 2009) ("We

---

[3] Further, some of the documents have been submitted under seal and the Court therefore does not discuss those details in this order.

5

construe all facts in the light most favorable to . . . the non-moving party, in deciding whether a dispute of fact is material and thereby precludes summary judgment.").  Based on the allegations of the FAC and evidence in the record, the Court assumes the following:

• Plaintiff Ellen O'Phelan, Jeff Meek, and Marylou Askren were involved in an incident in Hilo, Hawaii on May 18, 2008.  Dan O'Phelan (Plaintiff's husband or ex-husband, who is also a Hawaii-licensed attorney representing Ellen O'Phelan) may have been involved in some manner.  [*E.g.*, Supplemental Declaration of Lee Loy of June 2, 2010, at 12 (Doc. 98-1)].  Askren is or was a girl friend of Meek.  [FAC, ¶ 2].

• Meek allegedly sexually assaulted Plaintiff on May 18, 2008 at a Haili Street residence in Hilo, Hawaii.  [FAC, ¶ 22].  Askren may have been involved, as she was later being investigated either as a witness or for potential criminal involvement.  [*See, e.g.*, Lee Loy's Answer, Counterclaim, and Third-Party Complaint of Feb. 9, 2010 (Doc. 42), at 11-12].  Plaintiff did not initially report an assault to Hawaii County police.  [FAC, ¶ 6].  Plaintiff was herself arrested on May 18, 2008, apparently for alleged property damage.  [*Id.*].  The incident occurred at the residence where other tenants also lived, and Plaintiff was apparently arrested for burglary or property damage to a tenant's room or to other areas of the

6

residence.  Plaintiff did not report having been assaulted until after her own arrest.

[FAC, ¶ 7].

• Many of the factual details of this May 18, 2008 incident are disputed (but

ultimately such disputes are not material to the present motions).  For example,

there are disputes about details such as whether Ellen O'Phelan was intoxicated or

drugged, whether she was injured after jumping a five-foot fence while fleeing,

whether she vomited in the bed, whether she was bleeding, and whether and to

what extent she was injured.  [*See generally* Supplemental Declaration of Lee Loy

of June 2, 2010, at 5 to 22 (Doc. 98-1)].  These details might have some relevance

as to whether or not she was assaulted by Meek on May 18, 2008, but ultimately

have little to do with the main factual issues in this case, *i.e.*, whether her medical

records were unconstitutionally disclosed to or by Defendants by an improper

conspiracy.

• Criminal charges were not brought against Meek, and the FAC alleges that

certain witnesses were not interviewed by Hawaii County police.  [FAC, ¶ 21].

Defendant Benton Bolos was the detective employed by the Hawaii County Police

Department investigating the incident, including the allegations of sexual assault

against Meek.  [FAC, at 7-8; Declaration of Bolos of May 4, 2010, at 2 (Doc. 78-

4)].

7

• Defendant Lee Loy is an attorney representing Askren in related State-court proceedings in the Third Circuit Court, State of Hawaii (Hilo).  [FAC, ¶ 22] [*See also* Lee Loy's Answer, Counterclaim, and Third-Party Complaint (Doc. 42), at 11-12].  There is some dispute as to when Lee Loy was actually retained to represent Askren.  He was, however, representing her on September 12, 2008, during proceedings attempting to reconsider the granting by State Judge Harry Freitas of a restraining order obtained by Plaintiff against Askren and Meek.  [Plaintiff's Exh. 4, attached to Plaintiff's Motion for Partial Summary Judgment (Doc. 59-4); FAC ¶ 22].

• On May 19, 2008, Plaintiff was taken to Hilo Medical Center, where a medical examination or examinations were taken (including a sexual assault exam).  [FAC ¶¶ 10, 11, 36].  The information is, or was, confidential medical information.  [FAC ¶ 12].

• Sometime after May 19, 2008 (apparently on May 23, 2008), Plaintiff filed for and obtained a temporary restraining order in State Court proceeding number "3SS-08-1-148" against Meek and Askren.  [FAC, ¶ 16; Lee Loy's Answer, Counterclaim, and Third-Party Complaint (Doc. 42), at 11].  On August 8 and 11, 2008, hearings or a trial was held in the State Court restraining order proceeding.  The restraining order was upheld, and a three-year restraining order

8

was entered against Meek and Askren.  At this time Askren was not represented by counsel, at least at the August 11, 2008 hearing.  [FAC, ¶ 20].

• On August 8, 2008, Plaintiff and Dan O'Phelan filed a related civil action in State Court (case no. "3CC 08-1-257") against Meek and Askren.  [FAC ¶ 19]. This proceeding was removed (by Plaintiffs) to federal court in 2008 (U.S.D.C. Civ. No. 08-00407HG-KSC), but was subsequently remanded to State Court in 2009.  Lee Loy represents Askren in this civil proceeding (08-1-257) [*See, e.g.*, Exh. 3 to Plaintiff's Motion for Partial Summary Judgment (Doc. 59-3)].  He also represented Askren in at least part of the State court restraining-order proceeding (3SS-08-1-148).  [FAC, ¶¶ 19, 22].

• On September 12, 2008, Lee Loy appeared on behalf of Askren in the restraining order proceeding.  [Plaintiff's Exh. 4, attached to Plaintiff's Motion for Partial Summary Judgment (Doc. 59-4)].  He had filed a motion to set aside the entry of the three-year restraining order that was entered on August 11, 2008.  The basis of the motion apparently was "newly-discovered evidence not previously available."  The new evidence sought to be introduced by reopened proceedings was allegedly Plaintiff's medical records or information – the records of May 19, 2008 regarding the alleged sexual assault.  [FAC, ¶¶ 22, 23, 38; Plaintiff's Exh. 4 (Doc. 59-4)].  In the motion to set aside, Lee Loy sought to discredit prior

testimony of Ellen O'Phelan in an attempt to have the restraining order rescinded, or to convince Judge Freitas to hold further proceedings.  [*E.g.*, Supplemental Declaration of Lee Loy of June 2, 2010, at 24-25 (Doc. 98-1); Lee Loy's Answer, Counterclaim, and Third-Party Complaint (Doc. 42), at 5-6, and 11-12].

• The FAC alleges that Lee Loy obtained the medical records from, or by speaking with, Co-Defendant Bolos, a police detective investigating Plaintiff's allegations against Meek.  [FAC, ¶¶ 23, 33, 35, 39, 40, 42, 84].  Allegedly, the medical information was obtained without a subpoena, interrogatories or discovery order (in either state court proceeding – the restraining-order proceeding or the civil proceeding by the O'Phelans against Meek and Askren).  [FAC, ¶¶ 23, 42, 93, 94, 95, 96, 97].

• Lee Loy has asserted that, at times, he was "assist[ing] the detective investigate the alleged rape that he was investigating at that time[.]"  [Lee Loy's Answer, Counterclaim, and Third-Party Complaint (Doc. 42), at 8].  He asserts his "discussing with Mr. Bolos the reasons why the evidence might show Ellen O'Phelan might have made inconsistent statements . . . and for him to get all those statements before I would advise my client to waive her Fifth Amendment rights, was within my rights as Ms. Askren's advocate."  [*Id.*].

• The FAC alleges that Lee Loy and Bolos have a "past history" and

"continuing relationship." [FAC, ¶ 39, 86, 99].  Allegedly, Lee Loy's brother has a

position with the Hawaii County police.  [FAC, ¶ 88].  Lee Loy had "direct access"

to Bolos [FAC, ¶ 85].  The FAC alleges that Bolos "did unlawfully speak with

Gerard Lee Loy about an ongoing criminal investigation against Jeff Meek."

[FAC, ¶ 40, 101].  It alleges that statements on the record at the September 12,

2008 state court hearing "demonstrate[] that Mr. Lee Loy conspired with Benton

Bolos to obtain Plaintiff's medical records without a subpoena, interrogatories,

and/or court order for discovery."  [FAC, ¶ 42].

• In this regard, Plaintiff has submitted a transcript of the September 12,

2008 state-court hearing before Judge Freitas.  [Plaintiff's Exh. 4, attached to

Plaintiff's Motion for Partial Summary Judgment (Doc. 59-4)].[4]

---

[4] The Court overrules the County Defendant's objections to the admission of Exhibit 4. The County Defendants argue that the statements made in open court by Lee Loy to Judge Freitas regarding Bolos constitute inadmissible hearsay as to whether *Bolos* said or did anything related to Lee Loy regarding medical or police records.  While this argument might ultimately have some merit, it does not preclude the granting of a Rule 56(f) request for additional time, and does constitute some reason to believe that such a continuance might lead to admissible evidence as to Bolos.  In any event, there are other reasons to allow the case to continue at this time as against the County Defendants, and there is other evidence that Bolos said certain things directly to Plaintiff.  [*See* Declaration of Ellen O'Phelan of March 20, 2010 (Doc. 58-3), at 1; Declaration of June2, 2010 (Doc. 96-2), at 1].

The County Defendants' other objections are procedural or administrative -- e.g., Exhibit 4 contains underlining or notations, and did not comport with LR 56.1(c).  To the extent there are administrative violations, the Court will exercise its discretion and allow Exhibit 4 to stand.  The Court cautions counsel, including pro se attorneys, to endeavor to comply with federal and local rules regarding format of filings (e.g., tabbing of exhibits, spacing, timing, supplying of courtesy copies).  The Court has overlooked, in its discretion, minor violations of such rules here.

• During the September 12, 2008, hearing, Lee Loy, while representing

Askren, made several statements to Judge Freitas that could be interpreted to mean

he had already seen Plaintiff's confidential medical records, and that he had some

sort of agreement with Bolos regarding such records.  For example:

> Lee Loy: . . . So, Judge, I'm prepared to say that if you allow further hearing on this case, I will get you the police record [of Ellen O'Phelan] which I saw yesterday at 4:20 p.m. with Detective Ben Bolos.

[Exh. 4, at 5-6].

> Lee Loy: . . . . I'm saying if you look at – the hospital record from – from Ellen O'Phelan, the next day not that night, there is no report. . . .
>
> The Court (Judge Freitas):
>
> Where are you gonna get any of these things, sir?
>
> Lee Loy: From the – I got – I can get if from – yesterday I saw – I talked to Detective Ben Bolos.  Ben –
>
> The Court: The police report?
>
> Lee Loy: I saw the police reports.  I saw – not the police – I saw –
>
> The Court: Officer Bolos was here, and I didn't allow his testimony because there was objections to it.
>
> Lee Loy: Judge, I see the police report.
>
> . . . .
>
> The Court: So . . . there was knowledge that all of this evidence was there.
>
> Lee Loy: Judge –

The Court:   It just wasn't gotten.

Lee Loy:     Judge, when – last week when I first came into this case I tried to get a police report.  Ben Bolos told me he hasn't yet gotten the hospital stuff, and so I had to wait.

           And I told him "Good.  When you get the stuff, I'll let you talk to my client."

           So I get to talk to him yesterday afternoon at 4:20, and I'm looking at these things.  And I'm saying, Judge, if you saw these kind of things, you woulda had – be able to add on why that lady's credibility was in serious issue

. . . .

The Court:   My question, sir, is your client knew she was at the hospital.  How can they now say that they knew no medical records existed – . . . because medical records are done everytime anyone goes to the hospital.

Lee Loy:     Judge, as you know that hospital records requires the consent of the . . . . Wait, Judge, and – and I talked – I told you that I'm making a representation I can get from Detective Ben Bolos . . . . We didn't have evidence, Judge.  Until – until Ben Bolos got it it wasn't part of the police records . . . . He didn't have it last week.

[Exh. 4, at 10-14].

Lee Loy:     . . . . And I am saying to you now, Judge, when we're still in a timely fashion I have additional evidence that if you'll allow me to get that . . . . I just didn't have enough time yesterday to get Mr. Bolos, and he doesn't come to work today 'til 2:45.  But I do have now a police report which I believe he will testify it was not available to him last week or to the police last week so it was not discoverable to either defendant throught the police last week.

The Court:   You're referring to the police report or the medical records?

Lee Loy:     The police report which now includes the medical – some

medical records.

The Court:   So really what you're referring to is the medical records that are now in the police report?

Lee Loy:   Right.

The Court:   The medical records that could have been discoverable earlier . . . because the medical records probably existed from the date that Ms. O'Phelan went to the hospital.

Lee Loy:   Judge, I don't know that. . . .

The  Court:   Neither do I, sir.

. . . .

Lee Loy:   I got – I'm just telling you, Judge.  Yesterday afternoon I got from Detective Ben Bolos new evidence.

[Exh. 4, at 20-21].

• In other filings, Lee Loy denies that he had obtained the records before

September 12, 2008.  He also admits, or explains, that he had some sort of

agreement with Bolos and that he was acting as an advocate for Askren.  In a Court

pleading, he stated:

Defendant Lee Loy admits that I learned that Det. Bolos had reportedly obtained records from Hilo Medical Center but I did not know what was in those records nor did he disclose their contents to me.  He wanted to interview my client Marylou Askren regarding the rape allegations, and I had earlier told him that if he obtained O'Phelan's medical records, which I believed would include the hospital staff writing down her history and her statements, so he would know what Ellen O'Phelan had told the hospital staff, then I would allow him to take my client's statement . . . . At the time of the hearing the next day, I was an advocate for Marylou Askren.

[Lee Loy's Answer, Counterclaim, and Third-Party Complaint (Doc. 42), at 5].  He

goes on:

> . . . . I admit that I was advocating for Marylou Askren and asking the
> district court Hon. Judge Harry Freitas to take further evidence, that I
> believed Benton Bolos had evidence from both medical and police records . .
> . . I wasn't sure, at that time, what that information was in the medical
> records. . . . [M]y intent was to show the district court Judge that Dan and
> Ellen O'Phelan were making up the rape allegation in order to get Ellen off
> the burglary charge[.]

[*Id.*, at 6-7].

> • In opposition to Plaintiff's motion for partial summary judgment, Lee Loy

declares in relevant part:

> . . . . my statements to the district court [on September 12, 2008]
> contain errors in fact. . . .
> . . . . I am claiming that I did not see the contents of Ellen O'Phelan's
> medical records, or police reports, at that time, in September, 2008.  I have a
> reasonable explanation for using the words to the district court that fit
> perfectly with my role as an advocate.  I do not deny that I tried to persuade
> Judge Freitas to conduct further hearing . . . and I believed in good faith that
> the evidence would support my position.  Det. Bolos tried to assure me that
> charges were not pending against my client but my review of Mr.
> O'Phelan's complaint in cv [sic] 08-1-257 led me to believe otherwise.

[Supplemental Declaration of Lee Loy of June 2, 2010, at 24-25 (Doc. 98-1)].

> • Dan O'Phelan has declared in relevant part as follows:

> I was told by Benton Bolos in September 2008 that he intended to
> provide medical records to Gerard Lee Loy.  I objected to this.  At this point
> in time, no charges had been filed against Mr. Lee Loy's client Marylou
> Askren and the investigation was ongoing.

Shortly afterwards, I was called by Gerard Lee Loy who began the conversation by saying "I'm looking at your wife's medical records."  Mr. Lee Loy denies that he said this.

[Declaration of Dan O'Phelan in Support of Opposition to (the County

Defendants') Motion for Summary Judgment (Doc. 96-1), at 1].

• Indeed, Lee Loy denies having told Dan O'Phelan that Lee Loy was

looking at Ellen O'Phelan's records:

I deny ever telling Dan O'Phelan that I was looking at Ellen O'Phelan's medical records, or had her records, or saw her records, or made a deal with Benton Bolos to recommend to Ms. Askren to talk to him in exchange for him providing me access to or viewing Ellen O'Phelan's medical records.

[Declaration of Lee Loy of May 5, 2010, at ¶ 11 (Doc. 82-2)].

. . . . I did not, at anytime in 2008, have Ellen O'Phelan's "records", nor was there any agreement between Det. Bolos and I that he would (or did) disclose records to me.

[Lee Loy's Separate Concise Counter Statement of Fact, at 2-3 (Doc. 84)].

• Defendant Bolos also denies the existence of an agreement with Lee Loy,

although he does indicate there were discussions with Lee Loy regarding making a

statement as part of the investigation:

In July and September 2008, I had discussions with [Lee Loy], who I believed represented a witness named Mary Lou Askren ("Askren"), regarding Askren making a statement as part of the investigation.

I never, at any time, entered into any verbal or written agreement with Lee Loy whereby I would disclose Ellen O'Phelan's personal information/records in exchange for Askren making a statement.

16

I never, at any time, verbally disclosed to Lee Loy the contents of any hospital records, medical information, or other personal records pertaining to Ellen O'Phelan and/or the alleged May 18, 2008, sexual assault. Similarly, I never, at any time, disclosed to Lee Loy any physical copies of hospital records, medical information, or other personal records pertaining to Ellen O'Phelan and/or the alleged May 18, 2008, sexual assault.

[Declaration of Benton Bolos of May 4, 2010, at 2-3 (Doc 78-5)].

• Bolos also provides evidence that Ellen O'Phelan signed an

"Authorization for Use and Disclosure of Medical Information" on May 19, 2008

and on August 2, 2008. [Exh. 3, attached to Bolos Declaration of May 4, 2010

(Doc. 78-6)]. These authorizations state that Ellen O'Phelan authorizes Hilo

Medical Center to release medical records to the "Hawaii Police Department/Office

of the Prosecuting Attorney" for "Legal purposes." [*Id.*].[5]

• In December 2008, Ellen O'Phelan made a formal complaint with the

Hawaii Police Department against Defendant Bolos regarding, among other things,

his allegedly providing of confidential medical records to Lee Loy. [FAC, at ¶ 58].

This allegedly compromised a proper investigation into the alleged assault of

O'Phelan by Meek. [*Id.*].

• On October 29, 2009, the County of Hawaii Police Chief wrote to Ellen

---

[5] It is presumably a different issue – not raised or briefed – whether such an authorization would then allow the Hawaii Police Department to release that information to an attorney for a potential witness or potential co-defendant while investigating charges against a different potential defendant.

17

O'Phelan regarding the misconduct complaint she had filed against Bolos.  The

Chief wrote that

> . . . our Administrative Review Board found that there was sufficient
> evidence to sustain a portion of the charges of misconduct against Detective
> Bolos.  I concurred with the findings of the Administrative Review Board,
> and appropriate discipline was given.
>
> Section 92F-14 of the Hawaii Revised Statutes prohibits the police
> department from disclosing the disciplinary action taken.

[Exh. 11, attached to Plaintiff's Motion for Summary Judgment (Doc. 59-13)].

## III.

Given the evidence and allegations in the summary judgment record

summarized above, the Court has little difficulty finding that genuine disputes of

material fact exist such that Plaintiff's Motion for Partial Summary Judgment

should be denied.

In short, there is evidence indicating that Lee Loy had seen police or medical

records of Ellen O'Phelan before the September 12, 2008 state-court hearing (or at

the very least that Lee Loy *told* Judge Freitas that he had seen such records).  Lee

Loy's statements in his Answer in this case also indicate he had some sort of

agreement or understanding that he would allow his client, Askren, to be

interviewed by Defendant Bolos after Bolos provided Lee Loy with certain police

or medical records.  However, Lee Loy and Bolos have both denied (1) the

existence of an agreement, (2) that Lee Loy had seen such records prior to September 12, 2008, and (3) that Bolos provided Lee Loy with such access. Genuine disputes of material fact exist.[6]

Among the obvious questions of fact are (1) whether Lee Loy had seen records prior to September 12, 2008 (as he told Judge Freitas), or whether he had a "reasonable explanation" for such statements; (2) whether Lee Loy did so pursuant to "joint action" with (state actor) Defendant Bolos for purposes of a Section 1983 cause of action;[7] and (3) whether Lee Loy thereafter told Dan O'Phelan words to the effect that "I'm looking at your wife's medical records."  Accordingly, Plaintiff's Motion for Partial Summary Judgment is DENIED.

## IV.

In their counter motion for partial summary judgment, the County

---

[6]  Lee Loy offers many details of actual police and medical records, apparently in an effort to demonstrate that – despite what he told Judge Freitas in state court on September 12, 2008 – he had not seen those records (because he would have given Judge Freitas all those details on that date).  To the extent there is relevance to possible inconsistencies between what is in the police/medical records and what Lee Loy actually told Judge Freitas, such inconsistencies only further demonstrate that it is inappropriate to grant summary judgment at this stage.  They are not proof positive that Lee Loy did not see records.

Similarly, Lee Loy states several times that his conduct was all in the scope of his advocacy for Askren.  He does not, however, raise or cite any authority which would provide him absolute immunity against the allegations against him.

[7] That is, did they agree that, if Bolos would provide those records to Lee Loy (whether or not in a capacity as counsel for Askren) in exchange for allowing Bolos to interview Askren (as a witness or potential witness in a possible prosecution of Meek for sexual assault, or even as a potential suspect as an accessory to an assault)?

Defendants argue that there is no admissible evidence (only, perhaps, hearsay by Lee Loy) that *Bolos* disclosed confidential information to Lee Loy, much less pursuant to an improper agreement between Bolos and Lee Loy.  The County also argues that there is no evidence of inadequate training or supervision of Bolos by the County itself that would have allowed such violations.  The County offers affirmative evidence that it has adequate training into County policies governing release of personal or medical records.  [*See* Declaration of Marshall Kanehailua, Assistant Police Chief, of May 4, 2010, at 2-3 (Doc. 78-2)].

In response to the County Defendant's Motion, Plaintiff has filed a request pursuant to Fed. R. Civ. P. 56(f), seeking additional time for discovery.

> Under Fed. R .Civ .P. 56(f), a trial court may order a continuance on a motion for summary judgment if the party requesting a continuance submits affidavits showing that, without Rule 56 assistance, it cannot present facts necessary to justify its claims.  The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.

*Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citations omitted).

> [Rule 56(f)] provides a mechanism whereby a party opposing a motion for summary judgment may, by affidavit, state valid reasons why he is temporarily unable to present "facts essential to justify the party's opposition" to such motion. . . . If the court grants the party's 56(f) request, the court may (1) refuse to grant summary judgment; (2) order a continuance to permit affidavits to be taken or discovery to be

20

> had; or (3) make such other order as is just. . . . Rule 56(f) thus
> protects parties from a premature grant of summary judgment.

*Weinberg v. Whatcom County*, 241 F.3d 746, 750-51 (9th Cir. 2001) (citations

omitted).  "[A] district court should continue a summary judgment motion upon a

good faith showing by affidavit that the continuance is needed to obtain facts

essential to preclude summary judgment." *Id.* (citing *California v. Campbell*, 138

F.3d 772, 779 (9th Cir. 1998)).

The Court finds that Plaintiff has adequately met the Rule 56(f) standards.

Dan and Ellen O'Phelan have filed declarations indicating good faith reasons for

needing additional time as to claims against County Defendants.  In particular,

Ellen O'Phelan notes that she has testified that Defendant Bolos contacted her and

told her directly that he had released her medical records.  She seeks discovery into

why he would state that he released her medical records and later deny he did so.

[Declaration of Ellen O'Phelan of June 2, 2010, at 1 (Doc. 96-2)].  She also

indicates she seeks discovery into the circumstances of Lee Loy's detailed

statements to Judge Freitas in 2008 (prior to authorized release) about her records

and his statements regarding Bolos.  [*Id.* at 2].  She also seeks discovery into the

training procedures of the Hawaii Police Department, given that there are questions

of fact that there might have been violations by Bolos.  She disputes whether her

signed authorizations allowing the Hilo Medical Center to release information to

the County Police Department would then allow the Police to release information

to Lee Loy, and thus seeks to discover information into such a possible disclosure

by Bolos.  [*Id.* at 2-3]

     Dan O'Phelan has filed a similar declaration.  He also notes that Lee Loy has

indicated he was sometimes acting as an investigator with or on behalf of Bolos or

the County.  [Declaration of Dan O'Phelan of June 2, 1010, at 2 (Doc. 96-1)].  Like

Ellen O'Phelan, he also seeks discovery, or potential discovery, into the particulars

of the internal investigation by the County of Hawaii into the misconduct

complaint of Bolos (which investigation was found to be at least partially valid).[8]

     Under the current scheduling order, the discovery cut-off date for the

litigation is several months from now (November 26, 2010) [*See* Doc. 69, at 3].

Further, the trial date is currently set for early next year (January 25, 2010) [See

Doc. 69, at 1].  Thus, allowing additional time for discovery for Plaintiff to address

issues raised in the County Defendants' counter motion should not appreciably

delay proceedings.

     Accordingly, the Rule 56(f) request is GRANTED.  Rule 56(f) allows the

Court  to "refuse to grant summary judgment" or otherwise "make such other order

---

[8] Whether or not such records of an internal investigation will ultimately be allowed (or are confidential) is not before the Court.  The existence of records is at least some reason to grant a Rule 56(f) request.

as is just." *Weinberg*, 241 F.3d at 750-51.  Rather than continue the County Defendants' counter motion, the Court will DENY the counter motion WITHOUT PREJUDICE.  The County Defendants may, if appropriate, file a new motion for summary judgment or partial summary judgment later, after allowing Plaintiff a further opportunity to conduct discovery.

V.

For the foregoing reasons, the Court:

(1) DENIES Plaintiff's Motion for Partial Summary Judgment [Doc. 58];

(2) GRANTS Plaintiff's Rule 56(f) Request for additional time for discovery [Doc. 96], and therefore

(3) DENIES WITHOUT PREJUDICE the County Defendants' Counter Motion for Partial Summary Judgment [Doc. 80].

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 30, 2010.



Samuel P. King
Senior United States District Judge