IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELLEN J. O'PHELAN, | ) | Civ. No. 09-00236 ACK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERARD LEE LOY; BENTON BOLOS, | ) | |
| individually and as Police | ) | |
| detective; COUNTY OF HAWAII, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW; (2) CONDITIONALLY DENYING PLAINTIFF'S ALTERNATIVE MOTION FOR A NEW TRIAL; (3) DENYING DEFENDANT'S MOTION TO CORRECT JUDGMENT; AND (4) DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

**BACKGROUND**[1]

Plaintiff Ellen J. O'Phelan brought this action against Defendants Gerard Lee Loy, Benton Bolos, and the County of Hawai'i on May 26, 2009. Doc. No. 1. On February 18, 2011, Chief Judge Mollway granted summary judgment in favor of Bolos and the County of Hawai'i, and dismissed on summary judgment all but two of the claims against Lee Loy. Doc. No. 314.[2] On April

_____

[1] As the Court and the parties are familiar with the background of this case, the Court will discuss only those facts relevant to the instant motions. For a detailed discussion of the factual and procedural background of this case, see this Court's Order dated February 18, 2011. Doc. No. 314.

[2] This case was reassigned to this Court on February 25,
(continued...)

12, 2011, a jury trial commenced solely on O'Phelan's claim that Lee Loy had invaded her privacy.

On April 21, 2011, following five days of trial and three days of deliberation, the jury found by special verdict (1) that "Plaintiff proved by a preponderance of the evidence that Defendant intentionally intruded upon Plaintiff's privacy by improperly obtaining, without Plaintiff's consent or waiver or a court order as required, her medical records (including police reports containing her medical records) relating to her injuries from the alleged sexual assault"; and (2) that "Plaintiff proved by a preponderance of the evidence that this intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person"; but (3) that Plaintiff did not "prove[] by a preponderance of the evidence that this intrusion caused Plaintiff to sustain injury, damage, loss or harm." Doc. No. 466 at 1-2 (special verdict form). The Court published this special verdict and polled the jury, determining that the verdict was unanimous. Pursuant to Fed. R. Civ. P. 58(b)(2), the Court directed the clerk to enter judgment in favor of O'Phelan. The judgment, which was entered on April 21, 2011, stated that "no damages are awarded pursuant to the Special Verdict Form filed on April 21, 2011." Doc. No. 471.

---

[2]/(...continued)
2011. Doc. No. 316.

Three motions are now before the Court.[3/]  First, on April 22, 2011, O'Phelan moved for judgment as a matter of law or, alternatively, for a new trial.  Doc. No. 472.  Lee Loy opposed this motion on April 26, 2011 ("Opp'n"), and O'Phelan filed a reply on May 2, 2011 ("Reply").  Doc. Nos. 479, 484.[4/]  Second, on April 23, 2011, Lee Loy moved to amend the judgment.  Doc. No. 474.  Third, on May 2, 2011, Lee Loy moved for judgment as a matter of law.  Doc. No. 481.  O'Phelan has not filed oppositions in response to either of Lee Loy's motions.

The Court finds that a hearing on these motions is neither necessary nor appropriate.  See LR 7.2(e).

**LEGAL STANDARDS**

I.        **Motion for Judgment As a Matter of Law**

Federal Rule of Civil Procedure 50 states, in relevant part:

(a) Judgment as a Matter of Law.

---

[3/] Throughout this Order, the Court will use the term "Motion" in reference to the particular memorandum of law submitted in support of the motion being discussed in that section.

[4/] On May 2, 2011, O'Phelan moved to stay proceedings for 30 days so that she could review the trial record and supplement her post-trial motions and responses with specific citations to the record.  Doc. No. 486.  Finding that O'Phelan had not shown good cause for her request, the Court denied the motion on May 3, 2011.  Doc. No. 488.  Also on May 2, 2011, O'Phelan filed a duplicate of the reply in support of her motion, erroneously labeling it as a "cross motion."  Doc. No. 483.  Lee Loy filed an opposition to O'Phelan's "cross motion" on May 4, 2011.  Doc. No. 489.

(1) In General.  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) Motion.  A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.  If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

(1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or

(3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(a) and (b).

Judgment as a matter of law is authorized only when a jury's verdict is not supported by substantial evidence.  See Mockler v. Multnomah County, 140 F.3d 808, 815, n.8 (9th Cir.

4

1998). "'Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.'" Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999) (citation omitted).

"[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citation omitted). Thus, in deciding whether judgment as a matter of law is warranted, the Court may not assess the credibility of witnesses and must draw all reasonable inferences in the nonmovant's favor. Bell, 341 F.3d at 865. The Court "may not substitute its view of the evidence for that of the jury." Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001); see also Harvey v. Office of Banks & Real Estate, 377 F.3d 698, 707 (7th Cir. 2004) ("Our job at this stage is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict.").

The Ninth Circuit "strictly adhere[s] to the requirements of Rule 50(b), which prohibit a party from moving for judgment as a matter of law after the jury's verdict unless that motion was first presented at the close of evidence." Image

Technical Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1212
(9th Cir. 1997). If a party fails to make a motion for judgment
as a matter of law under Rule 50(a) before the case is submitted
to the jury, "a party cannot question the sufficiency of the
evidence either before the district court . . . or on appeal."
Cabrales v. County of Los Angeles, 864 F.2d 1454, 1459 (9th Cir.
1988) (emphasis omitted), vacated on other grounds, 490 U.S. 1087
(1989).

The single exception to this rule is the plain error
doctrine. Id. "Only where there is such plain error apparent on
the face of the record that failure to review would result in a
manifest miscarriage of justice should the [motion be granted]."
Id. In other words, there must be "an absolute absence of
evidence to support the jury's verdict" for a court to grant a
post-trial motion for judgment as a matter of law where the party
failed to move for judgment as a matter of law before the case
was submitted to the jury. Image Technical Servs., 125 F.3d at
1212 (citation omitted).

**II.      Motion for a New Trial**

A motion for a new trial is governed by Federal Rule of
Civil Procedure 59, which provides that after a jury trial,
"[t]he court may, on motion, grant a new trial on all or some of
the issues — and to any party . . . for any reason for which a

new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).

"Rule 59 does not specify the grounds on which a motion for a new trial may be granted." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Instead, the Court is "bound by those grounds that have been historically recognized." Id. "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (citation omitted). In ruling on a motion for a new trial, "the district court has 'the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" Id. (citation omitted and alterations).

In other words, in most cases, the judge should accept the findings of the jury; however, if the judge is left with the definite and firm conviction that a mistake has been committed, he may grant a new trial:

> On the one hand, the trial judge does not sit to approve miscarriages of justice. His power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it. On the

7

> other hand, a decent respect for the collective wisdom
> of the jury, and for the function entrusted to it in
> our system, certainly suggests that in most cases the
> judge should accept the findings of the jury,
> regardless of his own doubts in the matter. . . . If,
> having given full respect to the jury's findings, the
> judge on the entire evidence is left with the definite
> and firm conviction that a mistake has been committed,
> it is to be expected that he will grant a new trial.

Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371–72 (9th Cir. 1987) (internal quotation and citations omitted). "The judge can weigh evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Id. at 1371. But "the court is not justified in granting a new trial 'merely because it might have come to a different result from that reached by the jury.'" Roy v. Volkswagen of America, Inc., 896 F.2d 1174, 1176 (9th Cir. 1990) (citation omitted).

A district court's decision on a motion for new trial is reviewed for abuse of discretion. EEOC v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997).

## III.    Motion to Amend Judgment

A party may file a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). Reconsideration of a judgment after its entry is "an 'extraordinary remedy which should be used sparingly in the interests of finality and conservation of judicial resources.'" Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citation

8

omitted).  A Rule 59(e) motion "should not be granted, absent

highly unusual circumstances, unless the district court is

presented with newly discovered evidence, committed clear error,

or if there is an intervening change in the controlling law."

389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir.

1999).  A Rule 59(e) motion may be granted on four basic grounds:

> "First, the movant may demonstrate that the motion is
> necessary to correct manifest errors of law or fact
> upon which the judgment is based.  Second, the motion
> may be granted so that the moving party may present
> newly discovered or previously unavailable evidence.
> Third, the motion will be granted if necessary to
> prevent manifest injustice.  Fourth, a Rule 59(e)
> motion may be justified by an intervening change in
> controlling law."

McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)

(alterations and citation omitted).  This Court "'enjoys

considerable discretion in granting or denying'" a Rule 59(e)

motion.  Id. (citation omitted).

## DISCUSSION

I.     **O'Phelan's Motion for Judgment As a Matter of Law**

O'Phelan moves for judgment as a matter of law based on

the jury's failure to award any amount of damages and its finding

that she failed to prove, by a preponderance of the evidence,

that Lee Loy's intrusion upon her privacy caused her to sustain

injury, damage, loss or harm.  O'Phelan offers myriad reasons why

the Court should find, as a matter of law, that she is entitled

to at least one dollar in damages.  The Court is unpersuaded by

most of O'Phelan's arguments. However, based on the jury's conclusions (1) that Lee Loy intentionally intruded upon O'Phelan's privacy, and (2) that this intrusion was substantial and of a kind that would be highly offensive to an ordinarily reasonable person, but (3) that O'Phelan failed to establish compensatory damages, the Court finds O'Phelan therefore is entitled to an award of nominal damages of not more than one dollar, as mandated by Jury Instruction No. 14. Failure to award such damages constitutes plain error. Accordingly, the Court grants O'Phelan's motion for judgment as a matter of law and awards her one dollar ($1.00) in nominal damages.

At the outset, the Court notes that O'Phelan contends that her motion for judgment as a matter of law must be granted if the jury verdict is not supported by substantial evidence. Because O'Phelan did not move for judgment as a matter of law at the close of evidence, however, the Court can review the jury's verdict only if "there is such plain error apparent on the face of the record that failure to review would result in a manifest miscarriage of justice." <u>Cabrales v. County of Los Angeles</u>, 864 F.2d 1454, 1459 (9th Cir. 1988), <u>vacated on other grounds</u>, 490 U.S. 1087 (1989).

O'Phelan first argues that she is entitled to an award of damages as a matter of law because her testimony as to damages was uncontested and uncontroverted. Motion at 3-5, 7-8, 10.

According to O'Phelan, she "described with particularity her damages regarding lost sleep, not knowing where the records went, who received them, whether or not they hurt the investigation, and testified specifically that she suffered from anxiety, stress and worry." Id. at 3. Because Lee Loy did not contest such testimony, O'Phelan contends that the jury "must have had something else in their minds or acted unreasonably with respect to their view of the admissible evidence." Id. at 10.

O'Phelan's argument is unpersuasive. Jury Instruction No. 7 explicitly instructed the jury that it need not "accept all of the evidence as true or accurate"; that it was "the sole judge[] of the credibility or 'believability' of each witness and the weight to be given to his/her testimony"; and that it was free to "accept or reject the testimony of any witness in whole or in part." Doc. No. 459 at 8.[5/] Accordingly, the jury was free to reject O'Phelan's testimony regarding damages regardless of whether Lee Loy presented evidence contradicting such testimony. Apparently, the jury was not convinced by O'Phelan's testimony about the harm she suffered. The Court may not second-guess the jury's credibility determinations or its weighing of the evidence. Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001).

---

[5/] The Court notes that both parties agreed to all of the jury instructions.

11

In any event, the jury could have reasonably found that O'Phelan suffered no damage as a result of the invasion of privacy because, among other things: there was no evidence of injury aside from O'Phelan's limited testimony; there was no evidence that Lee Loy disclosed O'Phelan's medical records or the information contained therein to anyone else (beyond his limited statements at the September 12, 2008 hearing, which Lee Loy claimed only repeated similar statements O'Phelan had made at the earlier TRO hearing); there was circumstantial evidence suggesting that Lee Loy could have forthwith obtained O'Phelan's medical records legally in 2008 had he subpoenaed them; and there was evidence that Lee Loy did obtain the records properly within a year of the alleged sexual assault. Moreover, notwithstanding O'Phelan's testimony that the invasion of privacy caused her to suffer emotional distress, the jury could have reasonably found that any emotional distress was instead caused by the alleged sexual assault. Under such circumstances, O'Phelan cannot show plain error on the jury's part.

O'Phelan next argues that she is entitled to an award of damages as a matter of law because the jury may have improperly relied upon matters other than the admitted evidence or may have been confused by certain statements that they heard. In particular, O'Phelan posits that in considering O'Phelan's damages, the jury may have improperly relied upon and/or been

confused by Lee Loy's: (1) references to a "money case"; (2) his attacks on O'Phelan's credibility with regard to her allegations of sexual assault; (3) his references to O'Phelan's arrest; (4) his dual role as an attorney and a party; (5) his statements that he was "trying to do good" and "pursue justice"; and (6) his suggestion that O'Phelan altered evidence. <u>See</u> Motion at 3-9.

None of these grounds shows that the jury plainly erred in its damage finding. First, the Court instructed the jury to disregard any references to a "money case." Because "'[t]he law presumes that jurors carefully follow the instructions given to them,'" the Court rejects O'Phelan's suggestion that such references confused the jury. <u>Caudle v. Bristow Optical Co.</u>, 224 F.3d 1014, 1023 (9th Cir. 2000) (citation omitted). Even absent the Court's instruction, O'Phelan could not show that on account of Lee Loy's references to a money case, it would be a manifest miscarriage of justice if the Court left the jury's finding of no damages in place.

Second, the Court likewise instructed the jury on several occasions that it was "not tasked to decide whether or not Plaintiff was sexually assaulted." <u>See</u> <u>Caudle</u>, 224 F.3d at 1023. Moreover, <u>both</u> parties presented evidence to the jury about the underlying sexual assault, and <u>both</u> parties argued at length about whether such an assault occurred. O'Phelan used evidence corroborating her allegations of sexual assault to

bolster her credibility, and Lee Loy used evidence (potentially) undermining such allegations to attack O'Phelan's credibility. The Court thus rejects O'Phelan's suggestion that the jury improperly relied upon and/or was confused by attacks on O'Phelan's credibility with regard to her allegations of sexual assault.[6]

Third, the Court is unpersuaded by O'Phelan's suggestion that the jury improperly relied upon Lee Loy's references to O'Phelan's arrest, and was confused by Lee Loy's dual role as an attorney and a party. The Court instructed the jury several times to disregard any mention of O'Phelan's arrest. And Jury Instruction No. 4 stated that "any statements, objections or arguments made by the lawyers are not evidence in the case," while Jury Instruction No. 5 stated that "[e]xcept when a counsel testifies as a witness, you must not consider as evidence any statement of counsel made during the trial." Doc. No. 459 at 5-6; see Caudle, 224 F.3d at 1023.[7]

---

[6] Even absent the Court's instructions regarding the underlying sexual assault, O'Phelan could not show that on account of attacks on her credibility, it would be a manifest miscarriage of justice if the Court left the jury's finding of no damages in place.

[7] Further, even absent the Court's instructions, O'Phelan could not show that on account of Lee Loy's references to O'Phelan's arrest and his role as an attorney and a party, it would be a manifest miscarriage of justice if the Court left the jury's finding of no damages in place.

Fourth, O'Phelan cannot show that she is entitled to judgment as a matter of law on the grounds that the jury improperly considered Lee Loy's statements that he was "trying to do good" and "pursue justice," and his suggestion that O'Phelan altered evidence by writing a letter to Hilo Medical Center regarding her record. The Court does not find Lee Loy's statements or suggestions unfairly prejudicial to O'Phelan to the effect that it would be a manifest miscarriage of justice if the Court left the jury's finding of no damages in place.

Finally, O'Phelan argues that she is entitled to at least one dollar in damages because the jury ruled in her favor on the first two parts of her invasion of privacy claim. Motion at 10. O'Phelan also points out that based on the jury instructions, "[t]he jurors were able to award 'nominal damages' in the amount of one dollar." Reply at 4. The Court agrees that based on the jury's findings and Jury Instruction No. 14, O'Phelan is entitled to an award of nominal damages of not more than one dollar.

Jury Instruction No. 14, which both parties agreed to, provides as follows:

> The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

Doc. No. 459 at 15.  This instruction follows the commonly held view that nominal damages are to be awarded where an invasion of privacy is proven but no compensatory damages are established.[8/] See, e.g., Rohrbaugh v. Wal-Mart Stores, Inc., 572 S.E.2d 881, 886-88 (W. Va. 2002); Doe v. High-Tech Institute, Inc., 972 P.2d 1060, 1066 (Colo. App. 1998); Sabrina W. v. Willman, 540 N.W.2d 364, 371 (Neb. Ct. App. 1995); Trevino v. Southwestern Bell Tel. Co., 582 S.W.2d 582, 584-85 (Tex. App. 1979); see also Am. Jur. 2d Damages § 18 (2011); cf. Restatement (Second) of Torts § 652H cmt. c.[9/]

According to the special verdict form, which both parties agreed to, the jury found that O'Phelan proved by a preponderance of the evidence: (1) "that Defendant intentionally intruded upon Plaintiff's privacy by improperly obtaining, without Plaintiff's consent or waiver or a court order as

_____

[8/] Jury Instruction No. 14 plainly undermines Lee Loy's contention that "[t]he issue of $1 damages for plaintiff has meaning in the context of a civil rights claim but not in this case."  Opp'n at 10.

[9/] See also Thayer v. E. Maine Medical Ctr., 740 F. Supp. 2d 191, 194-95, 200-02 (D. Me. 2010) (noting that under Maine common law, nominal damages are presumed upon a finding that an invasion of privacy occurred, and amending the judgment to award one dollar in nominal damages because the jury found that the defendant intentionally violated the plaintiff's human rights under Maine law, but that the plaintiff failed to prove compensatory damages); Trevino, 582 S.W.2d at 585 ("We hold that although plaintiff was unable to prove any actual damages, he is entitled, nonetheless, to nominal damages for the trespass and invasion of privacy of his office establishment by the defendant telephone company's employee.").

required, her medical records (including police reports containing her medical records) relating to her injuries from the alleged sexual assault" and (2) "that this intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person." Doc. No. 466 at 1-2. However, the jury also found that (3) O'Phelan did <u>not</u> "prove[] by a preponderance of the evidence that this intrusion caused Plaintiff to sustain injury, damage, loss or harm." <u>Id.</u> at 2.

Based on the special verdict, the jury found for O'Phelan, but also found that she failed to prove compensatory damages as defined by Jury Instruction No. 13. Thus, O'Phelan is entitled to an award of nominal damages of not more than one dollar, as mandated by Jury Instruction No. 14. <u>See</u> Doc. No. 459 at 15 ("If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you <u>must</u> award nominal damages. Nominal damages may not exceed on dollar." (emphasis added)).

The Court recognizes that Jury Instruction No. 11 states that "For Plaintiff Ellen O'Phelan to establish her invasion of privacy claim against Defendant Gerard Lee Loy, she must prove" three elements, including that Lee Loy's intentional intrusion upon O'Phelan's privacy "caused Plaintiff to sustain injury, damage, loss or harm." Doc. No. 465; <u>see</u> Opp'n at 12,

17

14.[10/]  Nonetheless, Jury Instruction No. 14 demonstrates that proof of damage was not required for the jury to "find for plaintiff."  If proof of damage _were_ required for the jury to "find for plaintiff," it would be contradictory to instruct the jury on what to do "[i]f you find for the plaintiff but you find that the plaintiff has failed to prove damages"; Jury Instruction No. 14 would be rendered nugatory.

Jury Instruction Nos. 11 and 14 must be read and considered together.  Jury Instruction No. 11 addresses how O'Phelan can establish her entitlement to compensatory damages. Jury Instruction No. 14, on the other hand, is narrower, and addresses what happens if O'Phelan proves an intentional, substantial intrusion upon her privacy, but fails to establish injury, damage, loss or harm resulting from that intrusion.  In this situation, Jury Instruction No. 14 mandates that O'Phelan still be awarded damages, albeit only nominal damages not to exceed one dollar.  The jury instructions require that the instructions be read and considered as a whole, with each instruction being regarded in the light of all the others.  _See_ Doc. No. 459 at 2 (Jury Instruction No. 1) ("You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole."); _id._ at 4 (Jury

---

[10/] When this Order cites Jury Instruction No. 11, it is referring to that instruction as amended by the Court's response to Jury Question #2.  _See_ Doc. No. 465.

18

Instruction No. 3) ("[Y]ou are not to single out any certain sentences or any individual point or instruction and ignore the others, but you are to consider all the instructions as a whole and are to regard each in the light of all the others."). Moreover, the Court finds that when read and considered as a whole, the jury instructions are consistent and compatible; they are not prejudicially insufficient, erroneous, inconsistent or misleading. See Myers v. South Seas Corp., 76 Hawai'i 161, 164, 871 P.2d 1231, 1234 (1994).

In sum, because the jury found for O'Phelan on her invasion of privacy claim, but also found that O'Phelan failed to prove compensatory damages, O'Phelan is entitled to an award of nominal damages of not more than one dollar, as mandated by Jury Instruction No. 14. Failure to award such damages constitutes plain error. Accordingly, the Court grants O'Phelan's motion for judgment as a matter of law and awards her one dollar ($1.00) in nominal damages.

## II.      O'Phelan's Motion for a New Trial

O'Phelan alternatively moves for a new trial on damages. She incorporates the arguments from her motion for judgment as a matter of law and adds a litany of complaints about Lee Loy's conduct during trial. Motion at 11-13. Although the Court has granted O'Phelan's motion for judgment as a matter of law, Rule 50(c) requires the Court to conditionally rule on

19

O'Phelan's motion for a new trial "by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c)(1); see also Freund v. Nycomed Amersham, 347 F.3d 752, 764 (9th Cir. 2003) (holding that even where a party has failed to move for judgment as a matter of law at the close of evidence, Rule 50(c) "requires a district court granting [the party's post-trial motion for] judgment as a matter of law also to rule [conditionally] on whether to grant a new trial in the event the judgment as a matter of law is reversed on appeal"). The Court conditionally denies O'Phelan's motion for a new trial. O'Phelan fails to demonstrate that the jury's finding of no compensatory damages is against the clear weight of the evidence.

To begin with, none of O'Phelan's arguments for judgment as a matter of law persuade the Court that a new trial is warranted on the issue of compensatory damages. The jury's damage finding does not leave the Court "'with the firm conviction that a mistake has been committed.'" Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (citation omitted); Roy v. Volkswagen of America, Inc., 896 F.2d 1174, 1176 (9th Cir. 1990). As noted supra Section I, the only evidence that O'Phelan suffered emotional distress as a result of the invasion of privacy, and not solely as a result of the alleged sexual assault, was O'Phelan's limited and self-

20

serving testimony on the matter.  And while O'Phelan was a credible witness in some respects, the Court agrees with Lee Loy that she was at times uncooperative and inconsistent.  She also appeared at times to have a selective memory.  <u>See</u> Reply at 8-9.  Further, evidence suggested that Lee Loy could have lawfully subpoenaed O'Phelan's medical records in September 2008, shortly after he became counsel for Marylou Askren.  And evidence suggested that Lee Loy did obtain the records properly within a year of the alleged sexual assault.  Under such circumstances, O'Phelan fails to show that the jury's finding of no compensatory damages was against the clear weight of the evidence.[11/]

O'Phelan also fails to show that a new trial is warranted on account of Lee Loy's conduct during trial.  The Court will address O'Phelan's cursory arguments in summary fashion.

First, although Lee Loy suggested in his closing argument that the jury was to decide which attorney should be "left standing," as O'Phelan phrases it, the Court instructed the jury that this was <u>not</u> the decision before them.  <u>See</u> Motion at 11; <u>Caudle</u>, 224 F.3d at 1023.  Second, the Court likewise

---

[11/] The Court reiterates that it instructed the jury with regard to Lee Loy's: references to a "money case"; his attacks on O'Phelan's credibility with regard to her allegations of sexual assault; his references to O'Phelan's arrest; and his dual role as an attorney and a party.  <u>See</u> <u>Caudle</u>, 224 F.3d at 1023 ("'[T]he law presumes that jurors carefully follow the instructions given to them. . . .'" (citation omitted)).

21

instructed the jury (several times) to disregard any mention of O'Phelan's arrest. Motion at 12.[12/] Third, it is irrelevant whether Lee Loy "routinely accessed" or "manipulated" the exhibit binders. The jury did not receive these exhibits until the close of trial, after the Court had prepared a final binder of admitted exhibits, which was approved by counsel for both sides. See Motion at 12. Fourth, O'Phelan provides no persuasive support for her claim that Lee Loy elicited false testimony and perjured himself. See id. Fifth, Lee Loy never suggested that he was an expert or a medical doctor, and it was not improper for him to provide his lay opinion about what he believed to be the cause of O'Phelan's injuries. See id. This was relevant to Lee Loy's defense that if he had seen O'Phelan's medical records in 2008, he would have found her allegations incredible, and would have told the state court judge as much on September 12, 2008. Sixth, it was not improper for Lee Loy to reference the conduct of Dan O'Phelan, O'Phelan's husband and lawyer, as such conduct was (for the most part) relevant and not otherwise subject to exclusion.

---

[12/] O'Phelan faults Lee Loy for "publish[ing] to the jury redactions that could be read easily through the black markers." Motion at 12. Lee Loy allowed O'Phelan to review these redacted exhibits prior to their publication, however, and O'Phelan did not object to publication. And as the Court likewise pointed out to O'Phelan during trial, O'Phelan was as sloppy as Lee Loy in redacting her exhibits.

<u>See</u> <u>id.</u>[13/]  Finally, the Court does not agree that Lee Loy caused

so much distraction that the jury could not determine what was

relevant and what was not relevant.  <u>See</u> <u>id.</u> at 12-13.  Further,

the Court instructed <u>both</u> parties numerous times to stay on

topic.  Both parties strayed from the Court's instructions.

In sum, the jury's finding of no compensatory damages

is not against the clear weight of the evidence and the Court,

having considered the entire evidence, is not "'left with the

firm conviction that a mistake has been committed.'"  <u>Landes</u>, 833

F.2d at 1371-72 (citation omitted).  Accordingly, the Court

conditionally denies O'Phelan's motion for a new trial.

**III.    Lee Loy's Motion to Amend**

Lee Loy moves to amend the judgment "to conform" to the

special verdict form and to Jury Instruction No. 11.  The Court

denies this motion for the reasons stated <u>supra</u> Section I.  The

jury found for O'Phelan, but also found that she failed to prove

compensatory damages.  O'Phelan is thereby entitled to an award

of nominal damages of not more than one dollar, as mandated by

Jury Instruction No. 14 (an instruction that Lee Loy's Motion

ignores).  Judgment was properly entered in favor of O'Phelan,

and Lee Loy provides no persuasive basis for amending the

---

[13/] To the extent that any of Lee Loy's references to Dan
O'Phelan's conduct were improper, such references by no means
warrant a new trial.  Further, the Court notes that on several
occasions, Dan O'Phelan improperly indicated that he "would love
to testify," but was not allowed to do so.

judgment.  Accordingly, the Court denies Lee Loy's motion to amend.

**IV.      Lee Loy's Motion for Judgment As a Matter of Law**

Lee Loy also moves for judgment as a matter of law. Because Lee Loy moved for judgment as a matter of law before this case was submitted to the jury (unsuccessfully), the Court reviews this renewed motion under a substantial evidence standard.  See <u>EEOC v. Go Daddy Software, Inc.</u>, 581 F.3d 951, 961 (9th Cir. 2009).  The Court finds that substantial evidence supports the jury's findings, and it denies Lee Loy's motion.

First, Lee Loy reiterates the argument raised in his motion to amend that he is entitled to judgment as a matter of law based on Jury Instruction No. 11 and the jury's finding that O'Phelan failed to prove she was harmed or damaged as a result of Lee Loy's invasion of her privacy.  Motion at 2-4.  Again, this argument fails for the reasons stated <u>supra</u> Sections I and III.

Second, Lee Loy argues that O'Phelan "failed to present with reasonable certainty sufficient evidence that she suffered any damages."  Motion at 4-7.  After discussing his view of the evidence, Lee Loy then offers reasons why any compensatory damage award would likely have been small or non-existent.  <u>Id.</u> at 7-8. In particular, Lee Loy contends that "[t]he underlying unauthorized access was confined to a discrete period of time; there is no evidence of any misuse or unauthorized disclosure of

the information in the medical records[;] [and] the medical records were subject to discovery and eventual disclosure because of the claims filed by both Dan and Ellen O'Phelan against Jeff Meek and Ms. Askren." Id. at 7.

To the extent that Lee Loy argues that the jury reasonably found that O'Phelan failed to prove she was harmed by Lee Loy's intrusion of her privacy, the Court agrees. See supra Sections I and II. To the extent that Lee Loy argues that this entitles him to judgment as a matter of law, however, the Court disagrees. Again, the jury found that Lee Loy intentionally intruded upon O'Phelan's privacy, and that this intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person. The jury's subsequent finding of no compensatory damages saves Lee Loy some money. But that finding does not mean that Lee Loy prevailed, or that judgment should be entered in his favor. See supra Sections I and III.[14/]

Third, Lee Loy challenges the jury's finding that he intruded upon O'Phelan's privacy. Motion at 8-9. He argues that "there is no evidence of Lee Loy obtaining medical records information from any medical records, SANE or otherwise." Id. at 8. By this Lee Loy apparently means that there is no evidence

---

[14/] Although Lee Loy's second argument is directed toward the jury's damage finding, it also implies that substantial evidence does not support the jury's finding that Lee Loy intentionally intruded upon O'Phelan's privacy. The Court addresses this argument next.

that he improperly obtained such records between May 2008 and March 2009, the time period at issue.  <u>See</u> Doc. No. 465 (Jury Instruction No. 11).  The Court remains unpersuaded by Lee Loy's argument.  As the Court held at the close of evidence, there was ample evidence from which the jury could reasonably find that Lee Loy improperly obtained O'Phelan's medical records during the relevant time period.

In particular, based on an admitted court transcript, Lee Loy told a state court judge on September 12, 2008, that "I got," "I saw," "I see," "I'm looking at," "I do have now"; "[t]he police report which now includes the medical -- some [of O'Phelan's] medical records."  Trial Ex. 6 at 10-11, 19.  When that judge later asked which medical records Lee Loy was talking about, Lee Loy responded, "the medical records that Ben Bolos showed me yesterday."  <u>Id.</u> at 26.  Lee Loy also told the same judge that he "kn[ew]" the records were "electronically signed by Laura Kent," and "kn[ew]" that they made reference to Meek "gouging [O'Phelan's] private parts, pain."  <u>Id.</u> at 27.  Moreover, O'Phelan filed a complaint with the Hawai'i Police Department on December 19, 2008, alleging that "Detective Ben Bolos disclosed my confidential medical records to attorney Gerard Lee Loy without my authorization or consent."  Trial Ex. 9.  O'Phelan testified at trial that she filed this complaint without knowledge of Lee Loy's statements at the 9/12/08 hearing,

and based only on her understanding, following a telephone conversation with Detective Bolos, that Bolos had disclosed her medical records to Lee Loy.  All of this is substantial circumstantial evidence from which the jury could conclude that Lee Loy improperly obtained, "physically or otherwise," O'Phelan's medical records.  <u>See</u> Doc. No. 465 (Jury Instruction No. 11).

In his defense, Lee Loy continues to assert that: (1) his statements on 9/12/08 were somehow proper under the Federal Rules and the Hawai'i Rules of Professional Conduct; (2) Detective Bolos lied to Lee Loy on 9/11/08, when Bolos told Lee Loy that Bolos had O'Phelan's records; (3) Laura Kent's name appears only on page 5 of Exhibit 217; and (4) Exhibit 217 includes information, such as "an addendum note written at the request of Ellen O'Phelan," that Lee Loy plainly did not know about on 9/12/08.  Motion at 5-6.  Lee Loy also implies that Detective Bolos "mention[ed] some words or phrases to" Lee Loy that "happen[ed] to be later found out to have been included in certain confidential records"; but that this did not constitute "any improper disclosure of the medical records by the detective."  <u>Id.</u> at 9.

The Court finds that the jury could have reasonably rejected these defenses.  The jury also could have reasonably found Lee Loy incredible, and rejected his myriad other

explanations for his statements on 9/12/08. Likewise, the jury could have reasonably rejected Lee Loy's argument that if he were to have seen O'Phelan's medical records, he would have told the state court judge a host of other things. The judge repeatedly told Lee Loy that he did not want to hear about the underlying facts.

In sum, substantial evidence supports the jury's findings that Lee Loy (1) "intentionally intruded upon Plaintiff's privacy by improperly obtaining, without Plaintiff's consent or waiver or a court order as required, her medical records (including police reports containing her medical records) relating to her injuries from the alleged sexual assault" and (2) "that this intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person." Doc. No. 466 at 1-2. Accordingly, the Court denies Lee Loy's renewed motion for judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Plaintiff's Motion for Judgment As a Matter of Law; (2) CONDITIONALLY DENIES Plaintiff's Alternative Motion for a New Trial; (3) DENIES Defendant's Motion to Correct Judgement; and (4) DENIES Defendant's Motion for Judgment As a Matter of Law.

The Clerk of the Court is directed to enter an amended judgment awarding O'Phelan nominal damages in the amount of one dollar ($1.00) in accordance with this Order.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, May 23, 2011.



_____
Alan C. Kay
Sr. United States District Judge

O'Phelan v. Lee Loy, et al., Civ. No. 09-00236 ACK-KSC, Order (1) Granting Plaintiff's Motion for Judgment As a Matter of Law; (2) Conditionally Denying Plaintiff's Alternative Motion for a New Trial; (3) Denying Defendant's Motion to Correct Judgement; and (4) Denying Defendant's Motion for Judgment As a Matter of Law.